**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4071-17T1

ALBERTO URIBE,

    Plaintiff-Appellant,

v.

QUARTZ MASTER,

    Defendant-Respondent.

_____

Argued March 6, 2019 – Decided May 2, 2019

Before Judges Koblitz, Currier, and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-3881-16.

Yelena Kofman-Delgado argued the cause for appellant (Vlasac & Shmaruk, LLC, attorneys; Yelena Kofman-Delgado, of counsel and on the briefs).

John Goworek argued the cause for respondent (Law Office of John P. Hendrzak, attorneys; John Goworek, on the brief).

PER CURIAM

Plaintiff Alberto Uribe appeals from the grant of summary judgment to defendant Quartz Master. Because the trial judge found defendant was plaintiff's "special employer," she determined plaintiff's claim against defendant was barred under the Workers' Compensation Act (Act), N.J.S.A. 34:15-1 to -146. After a review of the record in light of the contentions advanced on appeal and the applicable principles of law, we affirm.

On Target Staffing, LLC (On Target), a job placement agency, and plaintiff executed a "Temporary Employee Work Agreement" (agreement). The agreement provided in relevant part that 1) plaintiff would receive his paychecks from On Target; 2) plaintiff needed to "[d]iscuss any problems or misunderstandings at work with [an] On Target supervisor only"; 3) plaintiff needed to "[a]lways remember [he is] NOT a staff employee of the company where [he is] assigned and [is] not eligible for any special privileges"; and 4) plaintiff had to "[i]mmediately notify [a] direct supervisor, and On Target, in the event of an on-the-job injury."

Through On Target, plaintiff began working at Quartz Master. He testified he reported there directly each day for more than four years, and considered himself a permanent employee. Plaintiff worked in the warehouse

and was trained to do multiple tasks. He stated his supervisor was the manager of the warehouse — Vipul Patel — and Patel "always told us what to do."

Patel testified that plaintiff worked for him in the warehouse for two years. He trained plaintiff and provided daily instruction on the work to be done. Patel also said if he was dissatisfied with plaintiff's work, he could tell On Target not to send plaintiff to the warehouse anymore.

Plaintiff instituted this suit against defendant after he was injured at defendant's workplace while performing his job duties. Defendant moved for summary judgment, arguing the Act barred plaintiff's tort claim "because [defendant] was the special employer of [p]laintiff." Plaintiff asserted in response that On Target was plaintiff's "sole employer."

In a well-reasoned written opinion, Judge Martha D. Lynes determined that defendant was a special employer of plaintiff under the five-factor test first established in Blessing v. T. Shriver & Co., 94 N.J. Super. 426, 430 (App. Div. 1967). The judge found: 1) plaintiff had an implied contract to work for defendant because he voluntarily accepted work assignments from defendant; 2) plaintiff was performing work duties for defendant under defendant's "training, directives, and supervision"; 3) Patel, defendant's agent, directed plaintiff's daily tasks at the warehouse; 4) even though On Target paid plaintiff, New Jersey case

3

law recognizes "employees of employment agencies are paid at least indirectly by the business . . . borrowing that worker for a temporary position," and as such, defendant indirectly paid plaintiff; and 5) defendant had the ability to advise On Target it did not want plaintiff at the warehouse and could request another temporary employee. As a result of her findings, Judge Lynes concluded defendant was a special employer under the Blessing test, and she granted summary judgment in defendant's favor on April 10, 2018.

We review a trial court's summary judgment disposition de novo based upon an independent review of the motion record, applying the same standard as the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015). Like the trial court, we consider whether there are any material factual disputes and, if not, whether the facts viewed in the light most favorable to the non-moving party would permit a decision in that party's favor on the underlying issue. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); R. 4:46–2(c).

"When no issue of fact exists, and only a question of law remains, [we] afford[] no special deference to the legal determinations of the trial court." Cypress Point Condo. Ass'n v. Adria Towers, LLC, 226 N.J. 403, 415 (2016) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

On appeal, plaintiff argues defendant was not a special employer because 1) Patel admitted during his deposition that plaintiff was not defendant's employee; 2) plaintiff never consented to being hired by defendant, precluding an implied employment contract; 3) the work plaintiff performed for defendant was done to maintain On Target's business relationship with defendant; 4) Patel could not directly fire plaintiff and, therefore, did not exercise control over him; and 5) plaintiff was not paid or provided any additional benefits by defendant.

The Act provides an employee with an "exclusive remedy" against its employer for injuries "arising out of and in the course of the employment." Gore v. Hepworth, 316 N.J. Super. 234, 240 (App. Div. 1998); N.J.S.A. 34:15-1, -7. In exchange for receiving workers' compensation benefits, the employee surrenders common law tort remedies against his or her employer and co-employees, except for intentional wrongs. N.J.S.A. 34:15-8.

However, in a situation where an employer borrows the employee of another entity, that employee may prevail in a common law action against the borrowing employer depending on whether the employer is determined to be a "special employer." Blessing, 94 N.J. Super. at 430. If the borrowing employer is determined to be a special employer, then the employee is precluded from bringing an action against the special employer. Id. at 429-30. A special

employment relationship exists where "(a) [t]he employee has made a contract of hire, express or implied, with the special employer; (b) [t]he work being done is essentially that of the special employer; and (c) [t]he special employer has the right to control the details of the work." Volb v. G.E. Capital Corp., 139 N.J. 110, 116 (1995).

Subsequently, courts have considered two additional factors in determining whether a special employment exists: "whether the special employer [(d)] pays the lent employee's wages, and [(e)] has the power to hire, discharge or recall the employee." Blessing, 94 N.J. Super. at 430. No one factor is dispositive; all five are weighed to evaluate a special employment relationship. Walrond v. Cty. of Somerset, 382 N.J. Super. 227, 236 (App. Div. 2006). Additionally, "not all five [factors] must be satisfied in order for a special employment relationship to exist." Ibid. (quoting Marino v. Indus. Crating Co., 358 F.3d 241, 244 (3rd Cir. 2004)). "[H]owever, it is believed that the most significant factor is the third: whether the special employer had the right to control the special employee." Ibid. (citing Volb, 139 N.J. at 116); see also, e.g., Mahoney v. Nitroform Co., 20 N.J. 499, 506 (1956) (stating the right to control is an "essential" element of the employment relationship); Gore, 316 N.J. Super. at 241; Santos v. Standard Havens, Inc., 225 N.J. Super. 16, 22 (App.

6

Div. 1988) (recognizing the significance of an employer's "<u>right</u> to exercise a higher degree of authority" over any actual discretion exercised by an employee).

In considering the factors expressed in <u>Volb</u>, we begin with a determination of whether plaintiff and defendant had an implied contract. An employment contract "may be express or implied." <u>White v. Atl. City Press</u>, 64 N.J. 128, 133 (1973) (citations omitted). A contract for hire "does not require formality." <u>Gomez v. Fed. Stevedoring Co.</u>, 5 N.J. Super. 100, 103 (App. Div. 1949) (citations omitted). While assent to the offer of employment "must be manifested in order to be legally effective, it need not be expressed in words." <u>Ibid.</u> The assent can be "implied from conduct without words." <u>Ibid.</u> (citation omitted). In determining whether an implied contract exists in the context of a special employment relationship, our focus is on the relationship between plaintiff and each of his potential employers. <u>Pacenti v. Hoffman-La Roche, Inc.</u>, 245 N.J. Super. 188, 193 (App. Div. 1991).

In <u>Antheunisse v. Tiffany & Co.</u>, 229 N.J. Super. 399, 402 (App. Div. 1988), we considered whether the plaintiff, a seasonal worker provided to the defendant through a staffing agency, had an implied contract with the defendant. We stated: "[The] plaintiff knew that [the personnel agency] would hire her out

to various employers and accepted the terms of her employment with [the] defendant." Id. at 404. We also found the plaintiff "had the opportunity to refuse the job without fearing any reprisal from the agency." Ibid. Therefore, we determined the plaintiff had "impliedly contracted with [the] defendant when she reported voluntarily to work" and "submit[ted] to [the] defendant's direction and control." Ibid.

Here, plaintiff voluntarily reported to defendant's warehouse for at least two years.[1] He was aware, under the agreement, that he could be hired out to various workplaces and he could stop working for defendant at any time.[2] In addition, both plaintiff and Patel testified that Patel was plaintiff's supervisor, Patel instructed plaintiff on "what to do" each day at the workplace, and plaintiff complied with those instructions. Plaintiff's actions demonstrate the existence of an implied contract between the parties.

Plaintiff also contests that defendant met its burden under the second factor because the work he performed for defendant was done to maintain defendant's relationship with On Target. This argument is without merit. As

---

[1] As stated above, plaintiff believed he worked at defendant's warehouse for four years.

[2] Plaintiff did not return to work at defendant's workplace after his accident. He testified he felt he was not "qualified" to do so.

we stated in Antheunisse, where the employee is doing the work that is the sole province of the borrowing employer, the borrowing employer is considered the employee's special employer. 229 N.J. Super. at 404-05. See also Kelly v. Geriatric & Med. Servs. Inc., 287 N.J. Super. 567, 571-72 (App. Div. 1996) (holding the defendant health care facility was a special employer of the plaintiff nurse rather than her general employer, a staffing agency).

Here, plaintiff worked in defendant's warehouse loading trucks with marble and granite slabs. On Target was a staffing agency. It is evident plaintiff's work duties were in the sole province of defendant. The second Volb factor has been met.

The third factor of the special employment test, described as "the most significant factor," is whether the special employer had the right to control the special employee. Walrond, 382 N.J. Super. at 236. "[I]t is well-settled that '[u]nder the control test, the actual exercise of control is not as determinative as the right of control itself.'" Santos, 225 N.J. Super. at 22 (quoting Smith v. E.T.L. Enters., 155 N.J. Super. 343, 350 (App. Div. 1978)).

Patel was plaintiff's supervisor who trained him and provided all of his daily work assignments. Patel was on the warehouse floor most of the day overseeing the workers and the operations. He also had the authority to contact

A-4071-17T1

On Target and tell them not to send plaintiff to the warehouse anymore. There was sufficient evidence to find defendant had the right to and did control plaintiff.

We briefly address plaintiff's remaining arguments. It is true that plaintiff was not on defendant's payroll. We, however, give little weight to this factor and have stated that it "is not necessary . . . [to determine if] a special employment relationship exists." Kelly, 287 N.J. Super. at 577 (citations omitted). Indirect compensation for services, as through a temporary staffing agency, is sufficient to determine that a special employment relationship exists. Ibid.

We are unpersuaded by plaintiff's assertion that defendant has not presented evidence to support the fifth factor under the required analysis. A borrowed employer does not have to show it has the right to terminate the employee from her position with her general employer. As we stated in Kelly, an employer's right to screen or unilaterally remove a particular employee from its facilities is "the functional equivalent of the power to discharge" that employee. Ibid.

In analyzing the special employment relationship through a consideration of a totality of the Volb factors, with particular scrutiny given to the right to

control, we are satisfied Judge Lynes properly weighed the relevant factors and determined that defendant was a special employer of plaintiff. Therefore, plaintiff was barred under the Act from bringing a claim against defendant and summary judgment was properly granted.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION