**Elmer Eugene SIMS, Petitioner,**

v.

**UNITED BRIDGE AND IRON, State Insurance Fund, and the State Industrial Court of the State of Oklahoma, Respondents.**

No. 40981.

Supreme Court of Oklahoma.

June 1, 1965.

McKeithen, Mouser & McKinley, Monroe, La., Paul Pugh and Al Pugh, Oklahoma City, for petitioner.

Sam Hill, Fred Nicholas, Jr., Charles R. Nesbitt, Atty. Gen., Oklahoma City, for respondent.

BLACKBIRD, Justice.

This is an original proceeding by Elmer Eugene Sims, who will be hereinafter referred to as claimant, to review an order of the State Industrial Court denying his claim for compensation against United Bridge & Iron, respondent, and its insurance carrier, State Insurance Fund.

The record discloses that claimant's usual occupation was welding; his home was in Delhi, Louisiana. Respondent's principal place of business was in Tulsa, Oklahoma, and Gordon C. Allen did all of its hiring and firing of personnel. Respondent's business was painting and repairing metal water tanks for cities and towns. At the time of the accidental injury complained of respondent was working on such a project in Mathis, Texas.

Claimant testified that in the middle of January, 1963, he quit a job he had in Missouri and called Allen in Tulsa, from Missouri, and asked him for a job; that Allen told claimant he needed a welder and would hire him; that claimant told Allen he had to go to Delhi before he could report for work; that Allen then told claimant to call him again because "I might have a man already"; that in about ten days he called Allen in Tulsa from Delhi, that Allen told him he needed him and told claimant he could go to work the following day on respondent's project in Mathis; that the next day, which was February 1, 1963, claimant reported to the job in Mathis, where he fell from the water tower, some eighty feet in the air, injuring himself rather severely.

On cross-examination, claimant testified when he talked to Allen from Delhi, Allen told him how much he would be paid an hour, to report to the foreman in Mathis and to fill out application and withholding forms when he reported for work.

Gordon C. Allen testified on behalf of respondent. He stated claimant called him in Tulsa from Missouri inquiring about a job; that that conversation was "just more of a greeting than anything else" but that he told claimant when he got ready to work to call him and if he had an opening, he would put claimant to work; that on the 31st day of January, 1963, claimant called him in Tulsa from Delhi.

"Q. Where were you when you received that telephone call from Mr. Sims?

A. In my Tulsa office.

Q. That is your only office, is it not?

A. Yes, sir.

Q. Did he ask you for a job?

A. Yeah, he did.

Q. And did you hire him?

A. Yes, sir, I did.

Q. What did you tell him to do?

A. I told him to go to Mathis, Texas.

Q. Did you tell him to report to work the next morning?

A. I told him to report as soon as he could to the foreman there, Kenneth Colyne."

The witness also testified that claimant's pay did not start until he reported for work at Mathis, Texas.

This is the evidence that is pertinent to this proceeding.

The trial judge found that "the contract of employment between claimant and respondent was consummated by act of the employer in Oklahoma" and awarded claimant certain benefits under the Workmen's Compensation Act.

The order was vacated and the claim denied by the court en banc on appeal "for the reason that the contract of employment * * * was not made in Oklahoma."

Claimant advances four propositions for vacation of the Industrial Court's order but the sole question to be determined is whether the contract of employment was made in the State of Oklahoma.

■ With regard to contracts generally, it is said that every contract results from an offer and the acceptance thereof. 17 C.J.S. Contracts § 34, p. 644; Martin v. Fretwell, 202 Okl. 204, 211 P.2d 529. An offer becomes a binding promise and results in a contract only when it is accepted. 17 Am.Jur.2d, Contracts, § 41; Strahm v. Board of Trustees of the Benevolent & Protective Order, etc., 203 Okl. 635, 225 P. 2d 159.

Claimant contends that "where the parties speak by long distance telephone, from different states, the contract is made at the place where the acceptor speaks his acceptance". He contends this is the general American rule and cited numerous authorities from foreign jurisdictions to that effect. He argues that when he called respondent from Delhi, Louisiana to Tulsa, Oklahoma, he made an offer to work which was accepted by respondent in Tulsa when respondent agreed to hire him, therefore "the contract was consummated in Oklahoma."

■ The general rule in Oklahoma is that a contract is deemed to have been made at the place where the final assent is given. Groendyke Transport, Inc. v. Gardner, Okl., 353 P.2d 695; Le Flore County Gas and Electric Co. v. Sickmann, Okl., 348 P.2d 312; General Electric Co. v. Folsom, Okl., 332 P.2d 950; Williams Brothers Co. v. Wiley, Okl., 337 P.2d 1078.

17 C.J.S. Contracts § 39, p. 665, defines acceptance as follows:

"To accept a contract is to admit it and agree to it; to accede to it; to assent to it; the ordinary meaning embodies assent and agreement."

Therefore, the general American rule stated by claimant, and the general rule in Oklahoma are not incompatible. The question is: Where was the acceptance or assent finally given? Was it in Louisiana,

from whence claimant called respondent? Was it in Oklahoma, where respondent took the call? Or, was it in Texas, where claimant reported for and did work?

 We have held that whether a contract is made in a foreign state or in Oklahoma is a question of law and fact to be determined from all the facts and circumstances. Scotty's Flying & Dusting Service v. Neeser, Okl., 393 P.2d 842.

The facts and circumstances in the case at bar are that when claimant called respondent from Delhi in Tulsa, it was in response to respondent's earlier suggestion in their first telephone conversation that when claimant "got ready to go to work to call me and if I had an opening I would put him to work;" that when this suggested call was made, respondent then made an offer of employment to claimant, promising to pay him a definite amount per hour for his services as a welder, conditioned on claimant's reporting to respondent's foreman in Mathis, Texas, where claimant's services were to be performed and at which time claimant's pay would start.

 Claimant argues that he was the one making the offer when he called respondent from Delhi and that respondent accepted that offer at his Tulsa office, so that their contract came into being in Oklahoma. We do not agree. We think the evidence, including claimant's testimony, shows that the Delhi-Tulsa telephone call was placed by claimant to inquire as to the existence of an "opening", and, undoubtedly, respondent was the offerer and claimant was the acceptor of the only offer of employment made during this conversation. Our conclusion, based on a consideration of all of the evidence, is that whether this offer be deemed to have been accepted then at Delhi, or not until later when claimant reported for work at Mathis, the acceptance did not occur in Oklahoma, and, under the hereinbefore cited rule, the employment contract involved was not an Oklahoma contract. Therefore, the Industrial Court's finding to that effect was correct. Since claimant's injury admit-

tedly did not occur in Oklahoma, the order denying the claim for want of jurisdiction was correct.

The order of the State Industrial Court is affirmed.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, IRWIN, BERRY and HODGES, JJ., concur.